## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SPAZ BEVERAGE COMPANY DEFINED | : | CIVIL ACTION |
| BENEFIT PENSION PLAN, ROBERT | : | |
| SPAZIANI, as TRUSTEE of the SPAZ | : | |
| BEVERAGE COMPANY DEFINED | : | |
| PENSION PLAN, and as a PARTICIPANT | : | |
| in the SPAZ BEVERAGE COMPANY | : | |
| DEFINED BENEFIT PENSION PLAN, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | NO.   11-02059 |
| | : | |
| STEVEN DOUGLAS, 1st GLOBAL | : | |
| ADVISORS, INC., 1st GLOBAL CAPITAL | : | |
| CORPORATION, and 1st GLOBAL | : | |
| CAPITAL ADVISORS, | : | |
| | : | |
| | : | |
| Defendants. | : | |

### MEMORANDUM

BUCKWALTER, S. J.                                                                                  August 4, 2011

      Presently before the Court is the Motion by Defendants Steven Douglas, 1st Global

Advisors, Inc., 1st Global Capital Corporation, and 1st Global Capital Advisors (collectively

"Defendants") to Stay this Action and Compel Arbitration pursuant to the Federal Arbitration

Act ("FAA"), 9 U.S.C. § 1, et seq.  For the following reasons, the Motion is granted.

## I.      FACTS AND PROCEDURAL BACKGROUND

      This action concerns losses to Plaintiffs Spaz Beverage Company Defined Benefit

Pension Plan ("the Plan") and Robert Spaziani, as Trustee and Participant of the Plan

(collectively "Plaintiffs"), caused by Defendants' alleged mismanagement of Plan assets.

Plaintiff Spaziani is the owner and sole shareholder of Spaz Beverage Company, a corporation located in West Chester, Pennsylvania. (Compl. ¶ 11.) Defendants 1st Global Advisors, Inc., 1st Global Corporation, and 1st Global Capital Advisors ("1st Global") are commonly-owned investment advising and management companies. (Id. ¶ 14.) Defendant Steven Douglas is a certified public accountant and registered financial advisor of 1st Global. (Id. ¶ 12.)

According to the facts set forth in the Complaint, in August of 2004, the Plan, via a series of agreements signed by Plaintiff Spaziani as Trustee, contracted with Defendants for asset management and investment advisory services. (Id. ¶ 2.) Plaintiffs allege that, during the course of the relationship between the Defendants and the Plan, Defendants failed to manage the Plan's assets prudently in violation of their statutory fiduciary duties under sections 409 and 502(a)(2) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1109 and 1132(a)(2). (Id. ¶¶ 29-37.) Specifically, Plaintiffs allege that Defendants were advised in April of 2008 that the Plan was to be terminated in approximately one year, yet failed to adjust their investment strategy to effect a successful payout of all Plan participants upon the Plan's termination. (Id. ¶¶ 27-29.) Consequently, the Plan suffered losses of hundreds of thousands of dollars and was left with insufficient assets to pay out Plaintiff Spaziani's retirement savings and anticipated retirement income. (Id. ¶¶ 4, 35.)

Plaintiffs commenced this action on March 25, 2011, alleging a claim for breach of fiduciary duties under ERISA §§ 409 and 502(a)(2). Defendants, citing two arbitration provisions appearing in their agreements with the Plan, moved to stay the action and compel arbitration on April 19, 2011. Plaintiffs filed a Response in Opposition on May 3, 2011, and Defendants filed a Reply on May 19, 2011. The Court now considers Defendants' Motion.

## II.      STANDARD OF REVIEW

When ruling on a motion to compel arbitration under the Federal Arbitration Act

("FAA"), 9 U.S.C. § 1, et seq., a court may only determine whether the merits of the case should

be arbitrated or litigated, and may not consider the merits of the underlying claims.  Great W.

Mortg. Corp. v. Peacock, 110 F.3d 222, 228 (3d Cir. 1997).  Before compelling arbitration, a

court must ensure that: (1) the parties entered into a valid arbitration agreement; and (2) the

dispute between the parties falls within the language of the arbitration agreement.  John Hancock

Mut. Life Ins. Co. v. Olick, 151 F.3d 132, 137 (3d Cir. 1988).

Notably, courts review motions to compel under the summary judgment standard set forth

in Federal Rule of Civil Procedure 56(c).  Weinstein v. AT & T Mobility Corp., No. CIV.A.07-

2880, 2008 WL 1914754, at *2 (E.D. Pa. Apr. 30, 2008).  "Therefore, movants must prove

through 'pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any, . . . that there is no genuine issue as to any material fact and that they are

entitled to judgment as a matter of law.'"  Id. (quoting FED. R. CIV. P. 56(c)).  "The Court must

consider all of the non-moving party's evidence and construe all reasonable inferences in the

light most favorable to the non-moving party."  Id. (citing Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 255 (1986); Versarge v. Twp. of Clinton N.J., 984 F.2d 1359, 1361 (3d Cir. 1993)).

## III.     DISCUSSION

Two arbitration provisions appear in two separate agreements between Defendants and

the Plan.  The first, a "Pre-Dispute Arbitration Agreement" located in the "Management Account

Programs Account Application," reads:

I agree that all controversies that may arise between us concerning any order or

3

transaction, or the continuation, performance or breach of this or any other agreement between us, whether entered into before, on, or after the date this account is opened, shall be determined by arbitration before a panel of independent arbitrators set up by either the New York Stock Exchange, Inc. or National Association of Securities Dealer, Inc. as I may designate.

(Defs.' Mot. Compel, Ex. A, 4.)[1]  The second, appearing in the "Investment Advisory

Agreement," states, in relevant part:

> Except as to claims arising under federal securities laws or for which available remedies at law override this provision, Advisor and Client agree that any controversy or claim arising out of or relating to this agreement, or the breach thereof, shall be settled by arbitration in accordance with the Securities Rules of the American Arbitration Association, and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction therefor.

(Id. at 11.)

Despite the presence of these provisions, Plaintiffs argue that the Court should not

compel Plaintiffs to arbitrate their claim for breach of fiduciary duties because (1) Plaintiff

Spaziani, as Trustee and Participant of the Plan, is a non-signatory to the investment agreements;

(2) the subject matter of the dispute is not within the scope of the arbitration agreements; and (3)

the agreements to arbitrate are ambiguous and thus invalid because they reference two different

arbitral forums.  The Court will consider these arguments in turn.

### A.   Whether the Arbitration Agreements are Applicable to Plaintiff Spaziani as Plan Trustee and Participant

"Arbitration is strictly a matter of contract.  If a party has not agreed to arbitrate, the

courts have no authority to mandate that he do so."  Bel-Ray Co., Inc. v. Chemrite (Pty) Ltd., 181

---

[1]  Notably, "[i]n July of 2007, the NASD was consolidated with the regulatory, enforcement, and arbitration bodies of the New York Stock Exchange to form the Financial Industry Regulatory Authority ("FINRA")."  S.E.C. v. Pasternak, 561 F. Supp. 2d 459, 477 (D.N.J. 2008).

F.3d 435, 444 (3d Cir. 1999) (citing <u>United Steelworkers of Am. v. Warrior & Gulf Navigation Co.</u>, 363 U.S. 574, 582 (1960)).  Plaintiffs argue that the arbitration provisions are not applicable to Plaintiff Spaziani as Trustee or Participant because he was not a party to the investment agreements in either capacity.  (Pls.' Resp. Opp'n 8.)  They contend that Plaintiffs' claim is based solely upon Defendants' statutory fiduciary duties under ERISA, and that such duties are wholly separate from any obligations created by the agreements between Defendants and the Plan.  (<u>Id.</u>)  Plaintiffs further argue that Plaintiff Spaziani's "individual" claim, as the only participant adversely affected by the mismanagement of the Plan's assets, is the "primary focus of the litigation," whereas "the plan and trustee claims [are] more derivative in nature in this litigation as a means to an end."  (<u>Id.</u>)

Although a court cannot order any party to arbitrate a dispute unless it has agreed to do so, "a variety of non-signatories of arbitration agreements have been held to be bound by such agreements under ordinary common law contract and agency principles."  <u>Barrowclough v. Kidder, Peabody & Co., Inc.</u>, 752 F.2d 923, 938 (3d Cir. 1985) (<u>overruled on other grounds by Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 7 F.3d 1110, 1114 (3d Cir. 1993)).  Defendants, without explicitly identifying any principle of contract or agency law, reason that Plaintiff Spaziani, as Plan Trustee and Participant, is bound to the arbitration provisions of the agreements because his claim "arises from" those agreements and is identical to and derivative of the claim asserted by the Plan.  (Defs.' Reply 1-2.)  In support of this proposition, Defendants cite <u>Bevere v. Oppenheimer & Co.</u>, 862 F. Supp. 1243 (D.N.J. 1994).  Similar to the facts at hand, in <u>Bevere</u>, the administrator of a profit-sharing plan opened an investment account on behalf of the plan with defendant Oppenheimer.  <u>Id.</u> at 1245-46.  The account agreement stated

that "[a]ll controversies which may arise between us concerning any transaction or the construction, performance or breach of this or any other agreement between us . . . shall be subject to arbitration . . . ." Id. at 1245. The plaintiffs, plan participants alleging violations of fiduciary duties under ERISA, argued that they were not were not bound to arbitrate because they were not parties to the agreement. Id. at 1246. The court disagreed, holding that "individuals who are not direct signatories to an arbitration agreement may nevertheless be bound by it when their claims arise from the very contract that contains the arbitration clause." Id. at 1249 (citing Barrowclough, 752 F.2d at 938-39). Applying that principle, the court reasoned that the claim clearly "ar[o]se from the relationship between the plan and Oppenheimer & Co.," and that this relationship was governed by the account agreement executed by the plan and Oppenheimer. Id. Thus, it found that the "plaintiffs simply can not on the one hand sue defendant on a claim arising from this relationship, while simultaneously seeking to repudiate the obligations set forth in the document that was created to govern that very relationship." Id.

Similarly, here Defendants argue that Plaintiff Spaziani, whose claim is "based on the same relationship created and governed by the Agreements," cannot litigate in a forum waived by the signator, the Plan. (Defs.' Reply 1.) The Court agrees. As an initial matter, the Court finds unpersuasive Plaintiffs' argument that the Plan's claim is "derivative" of that of Plaintiff Spaziani as Participant. In fact, the inverse is true: suits by non-plan entities for breach of fiduciary duties under § 1132(a)(2) "are derivative in nature – that is, while various parties are entitled to bring suit (participants, beneficiaries, fiduciaries, and the Secretary of Labor), they do so on behalf of the plan itself." Graden v. Conexant Sys. Inc., 496 F.3d 291, 295 (3d Cir. 2007) (citing Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 144 (1985)). "Consequently, the plan

6

takes legal title to any recovery, which then inures to the benefit of its participants and

beneficiaries."  Id.  Contrary to Plaintiff Spaziani's suggestion, the Plan's claim is not derivative

of the personal financial harm he has suffered; whether he is suing in his capacity as a Participant

or Trustee, he does so on behalf of the Plan.

       The Court is reluctant to base its holding on Bevere alone in light of its failure to identify

any principle of contract or agency law under which the plaintiffs were bound to arbitrate.[2]

Bevere does, however, ground its reasoning in Third Circuit precedent applicable to the facts at

hand.  In Barrowclough v. Kidder, Peabody & Co., Inc., supra, a participant in a deferred

payment program and his beneficiaries under the plan brought an ERISA claim against the

participant's former employer to recover wrongfully withheld compensation.  The employer

moved to compel all parties to arbitrate based on agreements the participant had signed with the

New York and American Stock Exchanges to arbitrate disputes "arising out of [his]

employment."  Id. at 927-28.  Though the plaintiff's beneficiaries were non-signatories to the

employment agreement, the court found – without explicit reference to any ordinary principle of

contract law – that "[t]heir inchoate and derivative claims should not entitle them to maintain

---

     [2] Bevere could be read as attempting to bind the plaintiffs via a form of equitable estoppel.  Under traditional theories of estoppel, "courts have held non-signatories to an arbitration clause when the non-signatory knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement."  E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S., 269 F.3d 187, 199-200 (3d Cir. 2001) (citing Thomson-CSF, S.A. v. Am. Arbitration Assoc., 64 F.3d 773, 778 (2d Cir. 1995)).  The Bevere court made no indication that the plaintiffs received any direct benefit from the agreement between Oppenheimer and the plan; rather, they found that the plaintiffs could not bring a claim arising from the relationship between Oppenheimer and the plan while repudiating obligations set forth in the document created to govern that relationship.  This Court, while ultimately adhering to Bevere based upon its reliance on binding Third Circuit precedent, does not find that such reasoning conforms with any traditional notion of estoppel.

separate litigation in a forum that has been waived by the principal beneficiary." Id. at 938-39.[3]

Here, given the derivative nature of Plaintiff Spaziani's claims as Participant and Trustee, the Court sees no reason these claims would not fall within Barrowclough's classification of "inchoate and derivative" claims subjecting non-signatories to arbitration agreements. Accordingly, the Court declines to find that Plaintiff Spaziani is not bound to arbitrate his claim on the basis that he is a non-party to the investment agreements.

### B.     Whether Plaintiffs' Claim Falls Within the Scope of the Arbitration Clauses

The FAA creates a strong policy in favor of arbitration. Sandvik AB v. Advent Int'l Corp., 220 F.3d 99, 104 (3d Cir. 2000). Any doubt over whether a particular dispute is covered by an arbitration agreement should be resolved in favor of arbitration. AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650 (1986). Thus, an order compelling arbitration "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960). Plaintiffs argue that their claim for breach of fiduciary duties does not fall within the scope of either of the two arbitration

---

[3]  Notably, although the non-signatory plaintiffs were "beneficiaries" of the signatory plaintiff under the compensation plan, the court did not appear to bind these plaintiffs using any traditional notion of third-party beneficiaries under contract law. In Pennsylvania, a party becomes a third-party beneficiary "where both parties to the contract express an intention to benefit the third party in the contract itself," or where "the circumstances are so compelling that recognition of the beneficiary's right is appropriate to effectuate the intention of the parties, and the performance satisfies an obligation of the promisee to pay money to the beneficiary or the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." Hay Acquisition Co., I, Inc. v. Schneider, No. CIV.A.04-1236, 2005 WL 1017804, at *8 (E.D. Pa. Apr. 27, 2005) (quoting Scarpitti v. Weborg, 609 A.2d 147, 150-51 (Pa. 1992)). The Barrowclough court made no indication that the employment agreement referenced or even contemplated the primary plaintiff's beneficiaries. Rather, the beneficiaries were labeled as such under the entirely separate compensation plan agreement.

provisions of the agreement.

The provision located in the Account Management Application, which authorizes Global Capital Corp. to open accounts and effect securities transactions on the Plan's behalf, provides that the parties shall arbitrate "all controversies that may arise between us concerning any order or transaction, or the continuation, performance or breach of this or any other agreement between us . . . ."  (Defs.' Mot. Compel, Ex. A, 4.)  The provision appearing as part of the Investment Advisory Agreement, which authorizes 1st Global Advisors, Inc. to act as the Plan's investment advisor, outlines 1st Global's advising services, and sets forth the Plan's investment objectives, states that "any controversy or claim arising out of or relating to this agreement, or the breach thereof, shall be settled by arbitration . . . ."  (Id. at 10.)  Plaintiffs contend that the language of both provisions only covers contractual breaches, whereas they are bringing suit for Defendants' violation of a separate, statutory duty under ERISA.  The Court disagrees, finding that the claim at hand falls squarely within the scope of both arbitration provisions.

With respect to the Advisory Agreement's mandate that the parties arbitrate all claims "arising out of" the Agreement, courts within the Third Circuit have consistently found that claims for breach of fiduciary duties fall within the scope of similar provisions.  See, e.g., Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d 1110, 1114-15 (3d Cir. 1993) (holding that provision requiring arbitration of "all controversies which may arise" between the parties to cash management agreement applied to claim for breach of fiduciary duties under ERISA); see also Becker Autoradio U.S.A., Inc. v. Becker Autoradiowerk GmbH, 585 F.2d 39, 46 (3d Cir. 1978) (finding that all issues arising between the parties in the course of their relationship could be described as "arising under" the agreement creating that relationship).  As

one court noted, "Pritzker and Becker stand for the proposition that in order to 'arise under' an agreement, a claim need not be identifiable as an issue explicitly covered by the agreement, but merely must be engendered by virtue of the relationship the agreement established or otherwise addressable by reference to the duties and obligations set out in the agreement." Am. Fin. Capital Corp. v. Princeton Elec. Prods., No. CIV.A.95-4568, 1996 WL 131145, at *9 (E.D. Pa. Mar. 20, 1996).

Similarly, although the scope of the arbitration agreement in the Account Application is limited to disputes "concerning any order or transaction, or the continuation, performance or breach of this or any other agreement between us," courts have interpreted nearly identical provisions broadly. See, e.g., Miron v. BDO Seidman, LLP, 342 F. Supp. 2d 324, 330 (E.D. Pa. 2004) (finding that an arbitration provision governing any claim "aris[ing] in connection with the performance or breach" of a consulting agreement between investors and advisors should be construed broadly). As noted above, the Application authorizes 1st Global Capital Corporation to open accounts and effect securities transactions on the Plan's behalf. The Complaint alleges that 1st Global "exercised authority or control with respect to management of The Plan's assets," and, in the course of effecting such transactions, caused loss to Plaintiffs by failing to manage those investments prudently and loyally. (Compl. ¶¶ 4, 16.) Reading the arbitration provision broadly, the Court finds, similar to Miron, that it "cannot say 'with positive assurance' that no interpretation of the arbitration clause would cover the current dispute." Miron, 342 F. Supp. 2d at 331. Accordingly, the Court finds that Plaintiffs' claim falls within the scope of both arbitration provisions.

**C.    Whether Reference to Two Forums Renders the Arbitration Provisions**

**Ambiguous and Unenforceable**

Finally, Plaintiffs argue, without citation to any legal authority, that because the arbitration provisions in the Management Account Application and Investment Advisory Agreement reference two different arbitral panels, those provisions are ambiguous and therefore invalid.  The Court disagrees.

Plaintiffs are correct in noting that the Account Application requires that disputes be determined "before a panel of independent arbitrators set up by either the New York Stock Exchange, Inc. or National Association of Securities Dealers, Inc. as I [the Plan] may designate," (Defs.' Mot. Compel, Ex. A, 4), whereas the Advisory Agreement states that disputes shall be settled "in accordance with the Securities Rules of the American Arbitration Association."  (Id. at 11.)  Such distinctions, however, have no impact on the clarity of the provisions themselves.  If anything, Plaintiffs raise potential questions concerning which of the two panels – both empowered to arbitrate this dispute – should have jurisdiction.  Neither party suggests any difference between the two forums, beyond Plaintiffs' request that, if the Court finds that Plaintiffs are bound to arbitrate, the terms of the Investment Management Agreement should apply because it "most closely resembles the claim in the Complaint."  (Pls.' Resp. Opp'n 12.)  Accordingly, the Court declines to find that reference to two different forums by two separate but equally enforceable arbitration clauses renders both provisions invalid.  If the parties dispute which forum should hear the claim, they may submit further briefing on this issue.

## IV.    CONCLUSION

In light of the foregoing, the Court finds the arbitration provisions to be valid and binding

11

as to all Plaintiffs for the dispute at hand.  Accordingly, the Court stays the action and compels arbitration.

An appropriate Order follows.